# Alabama Mineral Land Co. *v.* Blocton-Cahaba Coal Co.

*Assumpsit.*

(Decided May 6th, 1907.    43 So. Rep. 831.)

1. *Mines and Minerals; Coal Lease; Construction.*—Under a lease of coal lands that provided a royalty of seven cents per ton for coal mined, but allowed the lessors one cent per ton for the purpose of reimbursing them for the half of the costs of constructing a railroad branch to the property, until such reimbursement was made, the lessees were liable for one-half of the costs of constructing the railroad branch, notwithstanding the fact that the railroad reimbursed the lessors for the amount expended by them or for which they were liable, since the reimbursement was for a valuable consideration moving to the railroad.

2. *Appeal; Harmless Error; Exclusion of Evidence.*—Where the evidence sought to be offered, and which was excluded, would, if admitted, fail to establish a right of recovery, its exclusion was harmless error.

[Alabama Mineral Land Co. v. Blocton-Cahaba Coal Co.]

APPEAL from Birmingham City Court.

Heard before Hon. CHAS. A. SENN.

Assumpsit by the Alabama Mineral Land Co. against the Blocton-Cahaba Coal Co., for royalty on coal mined. From a judgment for defendant, plaintiff appeals. Affirmed.

This was an action for royalty on 500,000 tons of coal, under a lease between the parties. The defense set up was that this amount was retained to reimburse defendant for its half of the cost in grading and surfacing a branch railroad, to be built from the main line of the Southern Railway Company, to the mines operated by the defendant under the lease. To this plea the plaintiff replied, in effect, that the Southern Railway Company had reimbursed defendant for all the money paid out by it for the construction of said railroad, and that defendant had not expended any money in that direction, and hence this plaintiff was not liable to the defendant for one-half of the cost for the construction of said railroad under the terms of the lease contract.

BLACKWELL & AGEE, for appellant.—Where money is paid by one party in contemplation of an expenditure of money by the other, which money is not spent, or if spent is returned to it, the money may be recovered.— Chitty on Contracts, 921; Clark on Contracts, 204. Paorl testimony is admissible to show the circumstances under which the parties entered into the contract, that the court may be able to properly construe the meaning of the words used.—*Mason v. Alabama Iron Co.*, 73 Ala. 270; *Electric Lighting Co. v. Elder Bros.*, 115 Ala. 138; *Pollard v. Maddox*, 28 Ala. 321; *Watson v. Kirby*, 112 Ala. 436; *McGehee v. Alexander*, 104 Ala. 121. We do not insist that the court can give a new meaning to the words "allowance", but we do insist that the trial court should have admitted parol testimony for the purpose of determining the meaning that the parties gave to this word, if it did not change or vary the meaning of the written words.—*Smith v. Rice*, 56 Ala. 417; *Jenkins v. Cooper*, 50 Ala. 419; *Gunn v. Clem*, 68 Ala. 294. The stipulation here was that the

branch road was to be built at the defendant's expense, and the one cent per ton was to reimburse it for the outlay.—*Powell v. Thompson,* 81 Ala. 51; *Whatley v. Reese,* 128 Ala. 500; *L. & N. R. R. Co. v. Duncan, et al.,* 137 Ala. 446.

PERCY & BENNERS, for appellee.—Counsel discuss the various assignments of error, but cite no authorities.

ANDERSON, J.—Paragraph 3 of the lease is as follows: "The party of the second part shall pay to the party of the first part a rent or royalty of (7) seven cents per ton of two thousand (2,000) pounds on all coal mined of every quality and description, but an allowance of (1) cent per ton shall be made to lessee until sufficient tonnage has been mined, figured at one cent per ton, to cover one-half the cost of proposed branch railroad to be built to said land (which branch railroad is estimated to cost about $32,766 for 7,713 feet of grading, trestling, etc., the cost of track not to be considered) : provided, however, that, irrespective of the tonnage mined, such royalty of six (6) cents per ton shall not continue for more than seven (7) years from December 30, 1900." It is unnecessary for us to determine whether the lease required the plaintiff to pay one-half the cost of the branch line constructed, irrespective of what it may have cost the defendant, or whether it was to pay only one-half of what it actually cost the defendant; for, giving the plaintiff the benefit of a construction most favorable to it, and conceding that the contract meant that plaintiff was to reimburse the defendant by a reduction of one cent per ton on the royalty price, not to exceed a period of seven years, only to the extent of one-half of what the branch line actually cost the defendant—that is, the sum actually expended in the construction—the undisputed evidence shows that the amount of the royalty withheld by the defendant is $4,276.09, and that the road cost $27,-968.11, one-half of which was paid for by the defendant, being $13,993.05. Therefore one-half of said last sum should be borne by the plaintiff, which amounts to more

than the amount withheld by the defendant and for the recovery of which this suit was brought.

The plaintiff contends that the sum paid out by the defendant towards the construction of the branch line was repaid or refunded by the Southern Railway, and that said branch line did not, therefore, cost the defendant anything, and that it is not liable for any of the cost of constructing said line. If this money was refunded or paid without any consideration moving from the defendant to the Southern Railway, then it could not be said that this branch line cost the defendant anything, and there might be merit in the plaintiff's contention; but the evidence introduced and the contract offered by the plaintiff between the defendant and the Southern Railway fails to show that this amount was repaid the defendant without a valuable consideration. The contract under which the money was paid the defendant was not unconditional, but was dependent upon a compliance by the defendant with certain requirements of value to the Southern Railway, and a compliance with which required capital, energy, labor, and skill. The contract with the Southern Railway provided for the reimbursement of the defendant only in case the amount of coal shipped in 6 years would be sufficient to do so at the rate of five cents per ton, notwithstanding the contract covered a period of 20 years. Consequently, if the defendant did not mine and ship over the railroad a certain quantity of coal within a limited time, it would not be reimbursed for its cost of constructing the branch line. The contract also required the defendant to ship over the Southern road all coal mined by it for 20 years, that the defendant commence operating the mine within a fixed time, that a certain number of tons must be shipped each day, that the defendant should furnish the railroad a certain quantity of coal at a certain price, and that the railroad could cease operating the branch line and take up the rails in case defendant should abandon mining coal for six months or fail to make substantial shipments during a period of six months. Can it be said that the payment to the defendant of five cents per ton on all coal shipped by it

within a certain time was paid gratuitously, and not for a valuable consideration? We think not.

The trial court did not err in sustaining the demurrer to the plaintiff's second replication. Since a ruling favorable to the plaintiff upon the evidence complained of would give it no right to recover, if the trial court erred in excluding the evidencee, it was error without injury, and the judgment of the city court is affirmed.

Affirmed.

DOWDELL, SIMPSON, and MCCLELLAN, JJ., concur.